**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**May 26, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MARCUS HAYES,

    Plaintiff - Appellant,

v.

SHAWNEE COUNTY BOARD OF
COUNTY COMMISSIONERS; KWIK
STAFF,

    Defendants - Appellees.

No. 25-3155
(D.C. No. 5:24-CV-04030-EFM-RES)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Marcus Hayes, appearing pro se, appeals the district court's judgment in favor

of defendants on his claims of employment discrimination under the Americans with

Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA").  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A.  *Factual History*

From 2018 to 2021, Mr. Hayes provided custodial services to Shawnee County, Kansas, through a staffing company having a contract with the County. When that contract ended, the County contracted with Kwik Staff for temporary custodial services.  The County's Building Supervisor, Brent Smith, encouraged Mr. Hayes to apply to Kwik Staff, which he did.  In September 2021, Kwik Staff placed Mr. Hayes at the County's North Annex.  His custodial duties included trash removal, cleaning rooms, taking inventory, and restocking.  At the time of his placement, Mr. Hayes informed Mr. Smith and the County's Director of Facilities Management, Nelda Henning, that he had a disability—a traumatic brain injury sustained in 1995—and could work only a limited number of hours each month to stay under the income limit so he could remain qualified to receive Social Security disability benefits.

The County initially believed that part-time custodial services at the North Annex would meet its needs.  Mr. Smith allowed Mr. Hayes to bank hours worked in excess of his monthly limit and draw from that bank later.  But in July 2022, Mr. Hayes got a raise, which caused him to reach his monthly income limit more quickly.  In December 2022, Ms. Henning discovered the hour-banking arrangement and put a stop to it.  As a result, Mr. Hayes began working about half the number of hours in the final week of each month compared to the other weeks.  Mr. Smith then tried to perform Mr. Hayes's job duties when Mr. Hayes was absent.

In February 2023, after a North Annex employee complained to the County about uncleanliness and lack of supplies in a facility restroom, Ms. Henning and Mr. Smith realized that Mr. Hayes's position required more hours than he could work and still qualify for his disability benefits. They could not find another County custodial position that could accommodate his hours limitation. Kwik Staff then informed Ms. Henning that it had an alternative assignment available for Mr. Hayes, though not at a County facility, that could accommodate his hours restriction. In March 2023, Mr. Smith informed Mr. Hayes that his placement with the County would end in a week, and Kwik Staff offered Mr. Hayes the alternative assignment. But Mr. Hayes turned it down because he did not want to work the evening hours the position required. He completely stopped working for Kwik Staff.

## B.  *Procedural History*

Mr. Hayes filed complaints of disability discrimination against the County and Kwik Staff with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). The KHRC issued a finding of no probable cause. The EEOC adopted that finding and issued Mr. Hayes a right-to-sue letter on January 11, 2024.

Mr. Hayes then initiated the civil action underlying this appeal by filing a complaint on April 15, 2024, against the County, naming its Board of County Commissioners as the defendant. In September 2024, Mr. Hayes filed an amended complaint that also named Kwik Staff as a defendant. He asserted both defendants

failed to accommodate his disability and the County also wrongfully terminated his employment, all in violation of the ADA.

Kwik Staff filed a motion to dismiss the claim against it under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Hayes did not name it as a defendant within 90 days of receiving the EEOC's right-to-sue letter, as required by 42 U.S.C. § 2000e-5(f)(1) (made applicable to ADA actions by 42 U.S.C. § 12117).  Mr. Hayes opposed the motion, explaining he was unaware of his claim against Kwik Staff until he received, during discovery, the emails between Kwik Staff and Ms. Henning mentioned above.  The district court concluded the claims against Kwik Staff were untimely, Mr. Hayes was not entitled to equitable tolling, and his amended complaint did not relate back to the initial complaint.  The court thus granted Kwik Staff's motion to dismiss.

The County and Mr. Hayes both filed motions for summary judgment.[1]  The district court granted the County's motion and denied Mr. Hayes's motion.  The court noted that the parties disputed whether Mr. Hayes was disabled within the meaning of the ADA, but concluded that even if he was, he did not establish any other elements of a prima facie case of either failure to accommodate his disability or wrongful termination based on his disability.

Mr. Hayes appeals.

---

[1] Mr. Hayes also filed a motion for judgment on the pleadings, which the district court denied on the merits, and a second motion for summary judgment, which the district court denied as filed out of time.  Mr. Hayes raises no appellate challenge to either of these rulings.

4

## II. **DISCUSSION**

### A. *Waiver*

Because Mr. Hayes represents himself, we construe his filings liberally, but we cannot act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). But even reading his opening appellate brief liberally, we see no argument that the district court erred in granting Kwik Staff's motion to dismiss. He has therefore waived appellate review of that ruling. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotations omitted)).[2]

We doubt whether Mr. Hayes has adequately addressed the district court's ruling on the cross-motions for summary judgment—whether he was qualified for the custodial position with or without accommodation, and whether he suffered an adverse employment action. *See id.* (arguments "inadequately presented" in an "opening brief are deemed abandoned or waived" (quotations omitted)). Nonetheless, we will address that ruling.

---

[2] In his reply brief, Mr. Hayes reiterates his district-court argument that he was unaware of his claim against Kwik Step until he received the emails between Kwik Staff and Ms. Henning in discovery. This argument comes too late. *See Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 676 n.9 (10th Cir. 2016) ("We generally do not consider arguments raised for the first time in a reply brief.") Even if we were to reach the merits of this issue, we would affirm for substantially the same reasons the district court gave for granting Kwik Staff's motion to dismiss.

B. *Summary Judgment for the County*

1. **Standard of Review**

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906 (10th Cir. 2016). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Typically, when "we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Sup. Ct. of N.M.*, 839 F.3d at 906–07 (internal quotation marks omitted). In this case, the disposition of each motion turns on the same issues, so the summary-judgment inquiry collapses into one analysis.

2. **Analysis**

Among other things, the ADA prohibits a "covered entity" from (1) engaging in disability discrimination "against a qualified individual" regarding "discharge," 42 U.S.C. § 12112(a), and (2) failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," § 12112(b)(5)(A). When considering ADA discrimination claims on summary judgment, courts apply the *McDonnell Douglas* burden-shifting approach. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). Under that approach, the plaintiff "bears the

initial burden of establishing a prima facie case of discrimination." *Id.* If successful, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for its actions." *Id.* (internal quotation marks omitted). If the defendant does so, the burden shifts back to the plaintiff to show the defendant's proffered justification is "a pretext designed to mask discrimination." *Id.* A court should deny summary judgment if there is any genuine dispute of material fact regarding each element of the plaintiff's prima facie case or disputing the defendant's rebuttal. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (en banc).

A prima facie case for failure to accommodate and wrongful termination share two requirements, a showing that the plaintiff is (1) "disabled" and (2) "qualified" within the meaning of the ADA. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021) (wrongful-discharge claim); *see id.* at 992 (same with respect to failure-to-accommodate claim). Each prima facie case has a separate third requirement. Failure to accommodate requires the plaintiff to show that he "requested a plausibly reasonable accommodation." *Id.* at 992. Wrongful termination requires the plaintiff to show he "suffered an adverse employment action because of [his] disability." *Id.* at 989–90.

In his opening brief, Mr. Hayes argues at length that he is disabled within the meaning of the ADA and that the County knew he was disabled. We need not address that issue. Even if we, like the district court, assume he is disabled under the ADA, and we further assume the County knew he was disabled, he has not shown he

7

was qualified under the ADA or that he suffered an adverse employment action by the County because of his disability.

To be qualified under the ADA, an individual must be able to "perform the essential functions" of his job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). One such accommodation is providing "part-time or modified work schedules." § 12111(9)(B). "[A]n employee who proposes this accommodation may only prevail in an ADA action if he can demonstrate that he could perform the essential functions of the job while working part-time." *Carter*, 662 F.3d at 1146 (internal quotation marks omitted).

Mr. Hayes requested a part-time or modified work schedule when he informed the County of his hours restriction. Although the County was able to accommodate that request for some time, it ultimately became clear that Mr. Hayes could not fully perform the essential functions of the custodial position while working less than full-time. Mr. Smith tried to take up the slack, but the County received a complaint about the lack of cleanliness and supplies in a North Annex bathroom. Mr. Hayes thus failed to establish the second element of a prima facie case for both his failure-to-accommodate claim and his wrongful-termination claim.

Mr. Hayes's wrongful-termination claim against the County also fails because he did not show he was discharged because of his disability. As the district court explained, Mr. Hayes was a Kwik Staff employee, not a County employee, and the County released him only after it became clear the custodial position required more hours than he could work. After his release, Kwik Staff offered him a position that

could accommodate his hours restriction, but he turned it down. Thus, nothing in the record supports that he experienced an adverse employment action because of his disability.

## C. *Procedural arguments*

Mr. Hayes argues the district court did not properly consider evidence he submitted regarding his disability and defendants' knowledge of his disability, including sworn witness statements, video recordings showing that his supervisors had discussed his earnings limitation, and Social Security disability documentation. But the County says there are no sworn witness statements, and we are unable to locate any in the record. And our review of the record indicates the district court considered both his video evidence and evidence that he received disability benefits. Moreover, Mr. Hayes has not shown how any of the purportedly overlooked evidence would entitle him to reversal, nor do we see how it could. Like the district court, we have assumed he is disabled within the meaning of the ADA and that defendants knew he was disabled. Thus, Mr. Hayes fails to show how the district court committed any reversible procedural error in resolving defendants' dispositive motions.

Mr. Hayes also argues that the KHRC and the EEOC demonstrated institutional bias against him. But neither entity is a party to this case, so his argument is misplaced.

9

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge